21 F.3d 1116
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re UNICOM COMPUTER CORPORATION, a California corporation,
a/k/a Unicom Communications Corporation, NHC
Corp., and Unicom Capital Corporation, Debtor.
UNICOM COMPUTER CORPORATION, as debtor-in-possession,
Plaintiff-Appellee,
v.
INTERNATIONAL BUSINESS MACHINES CORPORATION, a New York
corporation, Defendant-Appellant.
 No. 92-17070.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 16, 1994.
Decided April 13, 1994.
 
 Before: CHOY, REINHARDT, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 I. INTRODUCTION
 
 2
 This bankruptcy case involves a dispute over 40 payments totaling $730,791.56 made by the debtor, Unicom Computer Corporation ("Unicom"), to the creditor, International Business Machines Corporation ("IBM"), during the 90-day period immediately preceding the filing of Unicom's petition for bankruptcy under Chapter 11 of the Bankruptcy Code.
 
 
 3
 IBM appeals the judgment of the district court, which held that 32 of the 40 payments were not made according to "ordinary business terms" under 11 U.S.C. Sec. 547(c)(2)(C) and were therefore avoidable. IBM also appeals the district court's calculation of the prejudgment interest award. We affirm on the "ordinary business terms" issue, we reverse on the prejudgment interest issue, and we remand to the district court for a recalculation of interest.
 
 II. BACKGROUND
 
 4
 Debtor Unicom Computer Corporation ("Unicom") was in the business of leasing, servicing, and supplying computers. About 90 percent of the products it handled was provided and installed by creditor International Business Machines Corporation ("IBM").
 
 
 5
 During the 90-day period immediately preceding the filing of Unicom's petition for bankruptcy, Unicom made 40 payments totaling $730,791.56 to IBM. The payments were made pursuant to 40 invoices that IBM had sent to Unicom primarily for the installation of equipment on the premises of Unicom's clients, but also for other services.
 
 
 6
 The 40 payments were made as follows: (i) none were made in accordance with the literal terms of IBM's national purchase contracts, which required payment upon installation; (ii) five were made in accordance with IBM's national grace period policy, which allowed payment 30 days after installation;[1] (iii) three were made within 30 days after notice of installation was given to Unicom;[2] (iv) 32 were made more than 30 days after installation or notice of installation.[3]
 
 III. PRIOR PROCEEDINGS
 
 7
 On September 12, 1988, Unicom filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. On September 11, 1990, Unicom filed an adversary proceeding against IBM in Bankruptcy Court to recover the 40 payments totaling $730,791.56 that it had made to IBM during the 90-day period immediately preceding its bankruptcy petition.
 
 
 8
 The bankruptcy court concluded that all 40 transfers satisfied the requirements of Sec. 547(c)(2) and therefore were not avoidable as preferential transfers. It reasoned that "[t]he payments were as ordinary as this court has seen, and followed a pattern of dealing established well before the preference period." Id. Unicom appealed, claiming that the ordinary "pattern of dealing" between the parties was insufficient to satisfy the "ordinary business terms" requirement of 11 U.S.C. Sec. 547(c)(2)(C).
 
 
 9
 The district court reversed the bankruptcy court's decision with respect to 32 of the 40 transfers. It found that the "ordinary business terms" requirement of 11 U.S.C. Sec. 547(c)(2)(C) required the transfers to conform with an objective industry-wide practice standard. Finding that industry practice was payment within 30 days of installation or notice of installation, the district court held that only eight of the 40 transfers were made under "ordinary business terms" and thus were not avoidable.
 
 
 10
 The district court entered a judgment in favor of Unicom in the amount of $668,498.44. The court also awarded Unicom costs of $5,283.85 and prejudgment interest of $132,906.69. The court based its prejudgment interest rate on the date that the prejudgment interest first started to accrue. The district court denied IBM's motion to alter or amend the judgment with respect the prejudgment interest award. Id.
 
 IV. DISCUSSION
 
 11
 A. "Ordinary Business Terms"
 
 
 12
 1. Statutory Background. Section 547(b) of the Bankruptcy Code, 11 U.S.C. Sec. 547(b), authorizes a trustee to avoid certain property transfers made by a debtor within 90 days before bankruptcy.[4] The purpose of that section is to "prevent favoritism among the debtor's creditors who ought in fairness to stand on the same footing." See Lawrence P. King et al., 4 Collier on Bankruptcy Sec. 547.10, at 547-36 (15th ed. 1993).
 
 
 13
 The Bankruptcy Code makes an exception to this rule for any transfer that is made in the ordinary course of business, 11 U.S.C. Sec. 547(c)(2). This exception provides:
 
 
 14
 (c) The trustee may not avoid under this section a transfer--
 
 
 15
 ....
 
 
 16
 (2) to the extent that such transfer was--
 
 
 17
 (A) in payment of a debt incurred by the debtor in the ordinary course of business or the financial affairs of the debtor and transferee;
 
 
 18
 (B) made in the ordinary course of business or financial affairs of debtor and transferee; and
 
 
 19
 (C) made according to ordinary business terms.
 
 
 20
 Id. (emphasis added).
 
 
 21
 2. Analysis. The only question before us is whether IBM's previous "pattern of dealing" with Unicom is sufficient to satisfy the "ordinary business terms" requirement of 11 U.S.C. Sec. 547(c)(2)(C) ("Section 547(c)(2)(C)").[5] IBM argues that such evidence is sufficient. Unicom disagrees; it argues that Section 547(c)(2)(C) requires evidence that the transfers at issue conform to an objective industry-wide standard.
 
 
 22
 We agree with Unicom. The phrase "ordinary business terms" is not defined by the Bankruptcy Code. However, this circuit has determined that Section 547(c)(2)(c) requires that the transfers at issue be "ordinary in relation to prevailing business standards." See In re Food Catering & Housing, Inc., 971 F.2d 396, 398 (9th Cir.1992).[6] In so doing, we adopted the view of the Ninth Circuit Bankruptcy Appellate Panel ("BAP"), which had held that Section 547(c)(2)(C) "requires proof that the challenged transfer was made pursuant to an objective standard based on practices common to businesses similarly situated to the debtor and transferee." See In re Loretto Winery, Ltd., 107 B.R. 707, 709 (9th Cir.BAP 1989) (emphasis added).
 
 
 23
 Here, the district court found that the relevant industry standard was payment within 30 days of installation or 30 days of notification of installation. This finding was based upon IBM's national grace-period policy, which was established through an agreement with an industry-wide trade association of equipment lessors. (The lessors sought the 30-day grace period because it would allow them time to obtain sufficient financing.) Accordingly, the district court held that the eight transfers satisfying this criteria were not avoidable.[7]
 
 
 24
 As to the other 32 payments, IBM failed to show by a preponderance of the evidence that those payments were made in accordance with "ordinary business terms." See 11 U.S.C. Sec. 547(g) (holding that the burden of proof is on the creditor); In re Food Catering & Housing, Inc., 971 F.2d at 398 (same). At trial, IBM merely established that Unicom had a pattern of paying its invoices well after they were due.[8] However, IBM introduced virtually no evidence of an industry-wide standard beyond the 30-day grace period it had already negotiated with the trade association.[9] At best, it showed that its local branch had "occasionally" dealt with other clients in a similar fashion. Accordingly, we affirm this portion of the judgment of the district court.
 
 B. Prejudgment Interest
 
 25
 On appeal, IBM does not dispute that Unicom is entitled to prejudgment interest.[10] IBM disputes only the district court's determination of the rate at which the interest is calculated.
 
 
 26
 The district court held that the prejudgment interest rate is determined with reference to the 52-week T-Bill auction rate "on the date that prejudment [sic] interest begins to accrue." The T-Bill rate on the date that prejudgment interest began to accrue--June 6, 1990--was 8.7%. See Declaration of Constance L. Kleiner in Support of Ex Parte Application for Entry of Judgment (July 23, 1992). Under that rate, IBM would have been liable for $132,906.69 in prejudgment interest.
 
 
 27
 By contrast, IBM argues that the interest rate should have been determined based on the 52-week T-Bill auction rate immediately prior to judgment. The T-Bill rate immediately prior to the date of judgment--September 10, 1992--was only 3.41%. See Declaration of Cheryl A. Stevens in Support of IBM's Motion to Amend or Alter the Judgment (Sept. 18, 1992). Under that rate, IBM would have been liable for only $53,501.25 in prejudgment interest.
 
 
 28
 We have previously held that in the bankruptcy context the prejudgment interest rate is governed by the 52-Week T-Bill auction rate "immediately prior to the date of judgment." In re Nucorp Energy, Inc., 902 F.2d at 734 (emphasis added); see also 28 U.S.C. Sec. 1961(a) (providing that the rate of interest is "the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of the judgment " (emphasis added)). Accordingly, we reverse the judgment of the district court on the prejudgment interest issue.[11]
 
 V. CONCLUSION
 
 29
 In sum, we affirm the district court's holding with respect to the "ordinary business terms" issue. However, we reverse its holding with respect to the prejudgment interest issue and remand for a proper recalculation of interest. The parties shall bear their own costs on this appeal.
 
 
 30
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Transfers 1, 2, 12, 13, and 14
 
 
 [2]
 Transfers 15, 18, and 40
 
 
 [3]
 Transfers 3, 4, 5, 6, 7, 8, 9, 10, 11, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, and 39
 
 
 [4]
 Section 547(b) provides:
 (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
 * * *
 (4) made--
 (A) on or within 90 days before the filing of the petition; ....
 Id.
 
 
 [5]
 The parties agree that the requirements of Sec. 547(c)(2)(A) and (B) have been satisfied
 
 
 [6]
 According to the Food Catering court:
 To qualify for the "ordinary course" exception, a creditor must prove that: 1) the debt and its payment are ordinary in relation to past practices between the debtor and this particular creditor; and 2) the payment was ordinary in relation to prevailing business standards.
 Id. (emphasis in original).
 
 
 [7]
 Unicom has not cross-appealed from this holding
 
 
 [8]
 For example, IBM's local branch payment policy allowed payment to be made at any time before the last day of the month in which the national grace-period expired. Thus, if the national grace-period expired on March 15th, the customer had until March 31st to make payment
 
 
 [9]
 IBM points to statements made by four witnesses: Unicom executive Richard Hynes, IBM employee Sandra Lee Santiago, IBM employee Karen Carney Wagner, and former Unicom employee Karen H. Phillips. However, none of these employees actually testified to an industry-wide payment standard. In fact, IBM voluntarily abandoned its line of questioning on this issue after Unicom objected that IBM had failed to lay a sufficient foundation for its questions
 
 
 [10]
 We have held that prejudgment interest may be awarded for preferential transfers under the Bankruptcy Code. See, e.g., In re Nucorp Energy, Inc., 902 F.2d 729, 734 (9th Cir.1990)
 
 
 [11]
 Our precedent allows a deviation from this rate if the equities of a particular case demand a different rate. However, "[t]his circuit has a strong policy in favor of the Treasury bill rate, ... [and] any departure from it must be accompanied by a reasoned justification." Blanton v. Anzalone, 813 F.2d 1574, 1576 (9th Cir.1987). Neither the District Court nor Unicom has advanced any reasons why the rate of interest should deviate from the 52-week T-Bill rate immediately prior to judgment